# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARMIN RAY DAVIS, | Case No.: 1:17-cv-01018-BAM |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

## **INTRODUCTION**

Plaintiff Carmin Ray Davis ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DBI") under Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[1]

Having considered the parties' briefs, along with the entire record in this case, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the

---

[1] The parties consented the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Doc. Nos. 6, 8.)

record as a whole and is based on proper legal standards. Accordingly, the Court affirms the agency's determination to deny benefits.

## **FACTS AND PRIOR PROCEEDINGS**

Plaintiff filed an application for disability insurance benefits on September 30, 2013. AR 165-73.[2] Plaintiff alleged that he became disabled due to rheumatoid arthritis, gouty arthropathy and a torn ligament in the left elbow. AR 195. Plaintiff's application was denied initially and on reconsideration. AR 98-101, 106-10. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ Timothy Snelling held a hearing on September 2, 2015, and issued an order denying benefits on October 29, 2015. AR 21-34, 39-77. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-5. This appeal followed.

**Relevant Hearing Testimony**

The ALJ held a hearing on September 2, 2015, in Stockton, California. AR 39-77. Plaintiff appeared and was represented by his attorney, Jeffrey Milam. Impartial Vocational Expert ("VE") Stephen Schmidt also appeared. AR 41.

Plaintiff initially testified that he has a high school education, along with specialized vocational training in special inspections for concrete. AR 45. Plaintiff's past work included cable installer, construction inspector and salesperson automobiles. AR 47.

In response to questioning from the ALJ, Plaintiff testified that he stopped working on December 27, 2012 because his right wrist was no longer functional. He could no longer carry a wheelbarrow full of concrete to conduct test samples. He had worked through pain for a few years prior, but it became so painful he could not continue. AR 48-50. His painkillers help, and the steroid works for his gout swelling. AR 51. When asked if could work at a job lifting 20 pounds occasionally and 10 pounds normally, Plaintiff testified that he could not. AR 52-53.

In response to questioning by his attorney, Plaintiff testified that he is left-handed. Although his left hand does not bother him, he has problems with his right wrist and hand, and he has worn

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

right-hand splint for the four years since he stopped working. Plaintiff also testified that he has arthritis and gout. He has arthritis in many places, including his knees, ankles right wrist and hand, but not fingers. His arthritis hurts worst in his knees and ankles, with constant pain worsening when walking and standing. AR 53-58. He can walk 30 minutes, and he can walk the length of a football field twice. AR 58. He can stand 30 minutes and sit for 1 hour. He can rarely lift 20 pounds, meaning he can lift 20 pounds two or three times an hour. He could not lift 20 pounds for two or three hours a day, and 10 pounds the rest of the day in a light job. He also could not stand and/or walk six hours to eight hours a day. AR 58-60.

Plaintiff also reported that he has problems with his left elbow. He has a torn ligament, and it is painful when he uses it. He could reach with his left hand less than two hours per day. AR 60-61. To help with the pain, he uses braces on his elbow, knees and wrist. He also has braces for his ankles. They are not prescribed, but his former primary physician requested that Plaintiff get them. Plaintiff began treating with a new doctor in October 2014, and he has seen the new doctor four or five times. AR 61-63.

Plaintiff also testified regarding his gout. He usually has a gout attack once a month, which lasts seven to ten days. It causes swelling and pain in his knees and ankles. He must elevate his legs constantly during the attacks, and does not get out of bed unless using the bathroom or for a doctor's appointment. AR 64-66. He takes a strong narcotic medication during the attacks. AR 72.

When asked about his living situation, Plaintiff testified that he lives with his friend Brenda, and two kids, his eight-year-old son and Brenda's thirteen-year-old son. Brenda takes care of the children when they are not in school. Plaintiff just watches TV with the kids and talks with them. He does not help with schoolwork, but tries to watch their sporting events, attending less than half of the games. He does not drive the kids to places, but picks up his son from school every day if he is not having a gout attack. Plaintiff used to coach the boys in baseball, but cannot do that anymore. AR 67-71.

Following Plaintiff's testimony, the ALJ elicited additional testimony from the VE. The ALJ asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to assume an individual restricted to light work, lifting and carrying 20/10, standing and walking 6/8 each, sitting

3

unlimited. The individual could occasionally climb ladders, ropes, and scaffolding, and all other postural activities could be done on a frequent basis, including climbing ramps and stairs, crouching, crawling, kneeling, and stooping. The individual also could perform frequent gross and fine manipulation with the bilateral upper extremities, but could have no more than occasional forceful pushing and pulling. The individual also could have no more than occasional overhead reaching with the left upper dominant extremity. The VE testified that such an individual could perform Plaintiff's past work as a construction inspector as defined in the Dictionary of Occupational Titles and the salesperson automobile as performed and as defined in the Dictionary of Occupational Titles. AR 72-73.

For the second hypothetical, the ALJ asked the VE to assume the same limitations of hypothetical one, but the individual, because of gout attacks and chronic pain, could not maintain regular attendance at work or complete a normal work day, 7 days per quarter, 28 days per calendar year. The VE testified that such an individual could not perform any past work. If the individual also was between 51 and 53 with a high school education and vocational training in special inspections, the VE testified that there would not be any employment or work available. AR 73-74.

For the third hypothetical, the ALJ asked the VE to consider hypothetical one and if there were any jobs such an individual could perform. The VE testified that the jobs of cashier, officer helper and cleaner would be available. AR 74-75.

**Medical Record**

The relevant medical record was reviewed by the Court, and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 24-34. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 27, 2012, his alleged onset date. AR 26. Further, the ALJ identified rheumatoid arthritis, gout, arthropathy, a history of left elbow torn ligament, and a history of poly arthritis with reflex sympathetic dystrophy of the right wrist as severe impairments. AR 26-27. Nonetheless, the ALJ determined that Plaintiff did

not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 27. Based on the record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a wide range of light work. Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, could stand and/or walk six hours out of an eight-hour workday, each, could sit without limitation, could occasionally climb ladders, ropes, and scaffolds, could frequently perform all other postural activities, including climbing ramps and stairs, crouching, crawling, kneeling, and stooping, could frequently perform gross and fine manipulation with the bilateral upper extremities, could perform no more than occasional forceful pushing and pulling with the bilateral upper extremities, and could perform no more than occasional overhead reaching with the left, dominant upper extremity. AR 27-32. With this RFC, the ALJ found that Plaintiff could perform his past relevant work as a construction inspector and salesperson automobile. AR 32-33. Alternatively, the ALJ found that Plaintiff could perform other jobs existing in the national economy, such as cashier, officer helper and cleaner. AR 33-34. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 34.

## **SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards,

and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Plaintiff contends that the ALJ's RFC finding is not supported by substantial evidence and that the ALJ failed to give legally adequate reasons for rejecting the opinions of Plaintiff's treating physicians.

**DISCUSSION**[3]

**1. Physician Opinions**

Plaintiff argues that the ALJ failed to give specific and legitimate reasons for rejecting the opinions of his treating physicians, Dr. Michelle Chu and Dr. Prithvi Shankar.

Cases in this circuit identify three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more weight should be given to the opinion of a treating source than to the opinions of doctors who do not treat the claimant. *Id.* Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

6

convincing" reasons. *Id.* If the treating physician's opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons supported by substantial evidence in the record to reject this opinion. *Id.*

In this instance, the opinions of Drs. Chu and Shankar arguably were contradicted by the state agency physicians, who determined that Plaintiff was capable of performing light work, including lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, sitting, standing, and/or walking about six hours each in an eight-hour workday, occasionally climbing, kneeling, crouching, and crawling, frequently balancing and stooping, and limited to occasional handling and fingering bilaterally. AR 82-84, 93-94. Thus, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence to reject the opinions of Drs. Chu and Shankar. However, an "ALJ need not accept an opinion of a physician-even a treating physician-if it is conclusory and brief and is unsupported by clinical findings." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

Dr. Chu

On July 24, 2015, Dr. Chu, a rheumatologist, completed a Questionnaire form and opined that Plaintiff had medical problems that precluded him from performing any full-time work at any exertion level, including the sedentary level. Dr. Chu identified Plaintiff's primary impairments as gout and plantar fasciitis with foot pain. Dr. Chu opined that Plaintiff could sit 8 hours in an 8-hour work day and stand/walk 30-60 minutes. He did not need to lie down or elevate his legs. He also had right wrist problems based on a diagnosis of chronic right wrist deformity from gout/septic arthritis and x-rays showed joint space narrowing. Dr. Chu opined that Plaintiff could lift 10 pounds frequently and occasionally. He could reach/grasp 50% of an 8-hour workday, handle 50% of an 8-hour workday, feel 100% of an 8-hour workday, push/pull for 50% of an 8-hour workday and perform fine finger manipulation 50% of an 8-hour workday. At any one time, Plaintiff could reach/grasp for 30 minutes, handle for 4 hours, feel for 4 hours, push/pull for 30 minutes and perform fine finger manipulation for 2 hours. AR 413-14.

In evaluating Dr. Chu's opinion, the ALJ provided a number of specific and legitimate reasons for discounting that opinion, not including certain of those reasons challenged by Plaintiff involving his routine care and non-compliance with medications and treatment recommendations (*See* Doc No.

15 at 12-14). As one reason, the ALJ determined that the findings of Dr. Chu were inconsistent with the evidence of record. AR 31. Inconsistency between a physician's opinion and medical records is a specific, legitimate reason for discounting the physician's opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("The incongruity between Dr. Nachenberg's Questionnaire responses and her medical records provides an additional specific and legitimate reason for rejecting Dr. Nachenberg's opinion of Tommasetti's limitations."); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (holding ALJ may discredit medical opinions that are unsupported by record as a whole or by objective medical findings). For example, in her Questionnaire, Dr. Chu identified bilateral limitations in reaching, grasping, handling, pushing, pulling and fine finger manipulation. AR 414. However, Dr. Chu's own opinion cites right wrist problems, not bilateral problems (AR 414), and Dr. Chu's own treatment notes repeatedly indicated that Plaintiff had full ranges of motion in all of his joints, including his knees, ankles, and hands, except for the right wrist (AR 446, 454, 457, 458, 462-63). The ALJ expressly considered the discrepancies between Plaintiff's physical examinations and Dr. Chu's opinion, noting that, with the exception of findings regarding his right wrist, Plaintiff's physical examinations were generally unremarkable. AR 30 (citing, in part Exhibit "7F," which includes Dr. Chu's treatment notes), 31. Plaintiff also admitted that he only had problems with his non-dominant right wrist and hand, not left hand, which the ALJ confirmed.[4] AR 28, 54. In addition to the inconsistencies in Dr. Chu's own treatment records, the ALJ also cited diagnostic records indicating that Plaintiff's limitations involved his right wrist and hand, including x-rays in May 2015 confirming that Plaintiff's joint space narrowing and arthropathy were more prominent in his right hand and wrist. AR 30, 491.

---

[4] As to bilateral issues, the Court recognizes that Plaintiff asserted issues with his left elbow, and the ALJ found Plaintiff's history of left elbow torn ligament to be severe. AR 26-27. However, Dr. Chu's Questionnaire detailing bilateral limitations did not include any diagnostic findings or other mention of left elbow, arm, wrist or hand issues. Moreover, the ALJ's RFC accounted for any limitations resulting from Plaintiff's history of left elbow torn ligament; to wit, the ALJ limited Plaintiff to frequently performing gross and fine manipulation with the bilateral upper extremities, occasional forceful pushing and pulling with the bilateral upper extremities, and occasional overhead reaching with the left, dominant upper extremity. AR 27.

The inconsistency with the records, including Dr. Chu's own notes, undermines her opinion and supports the ALJ's decision to give it less weight. *See* 20 C.F.R. 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"); *see also Valentine v. Astrue*, 574 F.3d 685, 692-93 (9th Cir. 2009) (finding ALJ validly discounted treating physician's opinion because his opinion conflicted with his own treatment notes and other evidence).

Additionally, the ALJ rejected Dr. Chu's opinion regarding exertional limitations because that opinion was inconsistent with Plaintiff's activities of daily living. AR 31. An ALJ may properly discount a treating doctor's limitations where those limitations appear to be inconsistent with the claimant's activity level. *See, e.g., Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (finding ALJ provided adequate reasons for rejecting treating physician's opinion, including where the physician's restrictions appeared to be "inconsistent with the level of activity that [the claimant] engaged in"). Here, Dr. Chu opined that Plaintiff could lift only 10 pounds occasionally or frequently, but the ALJ considered Plaintiff's admission that he could lift 20 pounds 2 to 3 times per hour. AR 31, 59-60. Dr. Chu also opined that Plaintiff could walk only 30-60 minutes per day, but the ALJ cited Plaintiff's testimony that he could walk the length of a football approximately twice. AR 31, 58. The ALJ also considered Plaintiff's testimony that he attended parent-teacher conferences, went to sporting events, and picked up his eight-year old child. AR 29, 68-69. Additionally, the ALJ noted record evidence that Plaintiff was still coaching his kids in April 2015. AR 31, 457. Furthermore, treatment notes from Dr. Shankar, discussed below, repeatedly confirmed that Plaintiff did not require direct personal assistance to perform his activities of daily living. AR 31, 366, 368, 371, 376.

These activities appear inconsistent with Dr. Chu's exertional limitations regarding Plaintiff's lifting and carry abilities, standing and walking abilities and his bilateral reaching, grasping, handling, pushing, pulling and fine finger manipulation.

Dr. Shankar

On January 28, 2013, Dr. Shankar completed an Initial Disability Claim Form – Physician's Statement. Dr. Shankar opined that Plaintiff became disabled on December 27, 2012, due to right hand acute gouty arthropathy and right hand traumatic arthritis. AR 375-76. However, Plaintiff did

not require direct personal assistance to perform activities of daily living. AR 376. Dr. Shankar also completed multiple Continuing Disability Claim Form – Physician's Statements dated March 3, 2013, May 2, 2013, and August 22, 2013, in which he opined that Plaintiff remained disabled due to right hand acute gouty arthropathy and right hand traumatic arthritis and was not expected to be released to work until September 12, 2013. AR 366, 368, 371. However, Dr. Shankar repeatedly opined that Plaintiff did not require direct personal assistance to perform his activities of daily living. *Id.* On September 11, 2013, Dr. Shankar opined that Plaintiff no longer was "capable of during [sic] his job due to stiffness of his right wrist and deformities in his fingers." AR 384.

As with Dr. Chu's opinion, the ALJ gave little weight to Dr. Shankar's opinion of total disability because it was inconsistent with the record evidence. AR 31. For the reasons discussed above, the Court finds that the ALJ's determination was not in error, and the ALJ provided specific and legitimate reasons to discount that opinion. In particular, Dr. Shankar's opinion did not account for Plaintiff's activities of daily living nor was it consistent with evidence of record regarding Plaintiff's functional abilities unrelated to his right hand and wrist. Indeed, the ALJ noted that Dr. Shankar's treatment notes showed physical examinations with generally unremarkable findings aside from those associated with Plaintiff's right wrist and hand. AR 30 (citing, in part, Exhibit "5F" [AR 357-412]; AR 31. The ALJ's determination is supported by substantial evidence in the record.

According to those records, in December 2012, Plaintiff had swelling of his right hand, but he had normal gait, normal range of motion of all major muscle groups, no limb or joint pain with range of motion, and muscle strength of 5/5 in all major muscle groups. AR 396-97, 398-99. In January 2013, Plaintiff complained of right wrist pain, with decreased range of motion and pain, but noted that he might have hurt his hand while roughhousing with his kids a few weeks prior. On examination, he had normal gait, normal finger movements and muscle strength of 5/5 in all major muscle groups. AR 394-95. In March 2013, Plaintiff had left ankle swelling and complaints of right wrist pain, but Dr. Shankar also noted normal gait, normal range of motion in all muscle groups, no limb or joint pain with range of motion and muscle strength of 5/5 in all major muscle groups. AR 391-92. In April 2013, Plaintiff complained of elbow pain, and only mild knee symptoms, but on examination had a normal gait, normal range of motion of all major muscle groups, no limb or joint pain with range of

10

motion and muscle strength of 5/5 in all major muscle groups. AR 389-90. In July 2013, while Plaintiff was noted to have decreased range of motion and pain in his right wrist, his gait was normal and he had muscle strength of 5/5 in all major muscle groups. AR 385-86. In September 2013, Plaintiff complained of right hand discomfort, and while he had decreased range of motion noted in his bilateral elbow flexion and extension and his right wrist flexion, extension, ulnar deviation and radial deviation, Plaintiff had a normal gait, no limb or joint pain with range of motion, and muscle strength of 5/5 in all major muscle groups. AR 383-84. In December 2013, while Plaintiff had ankle pain and swelling, along with decreased range of motion noted in his bilateral elbow flexion and extension and right wrist flexion, extension, ulnar deviation and radial deviation, Plaintiff also had a normal gait, no limb or joint pain with range of motion, and muscle strength of 5/5 in all major muscle groups. AR 378-79.

Generally, these treatment notes do not support Dr. Shankar's opinion of total disability. Moreover, Dr. Shankar's opinion of total disability, including Plaintiff's inability to work, is an issue reserved for the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.").

### 2. State Agency Physicians

Plaintiff also argues that the opinions of the state agency physicians do not constitute substantial evidence. Although the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician," *Lester*, 81 F.3d at 831, reports of non-examining medical experts "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

As noted above, the state agency physicians determined that Plaintiff was capable of performing light work, including lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, sitting, standing, and/or walking about six hours each in an eight-hour workday, occasionally climbing, kneeling, crouching, and crawling, frequently balancing and stooping, and

limited to occasional handling and fingering bilaterally. AR 82-84, 93-94. The ALJ assigned these opinions significant weight, noting they were consistent with "the similar range of light residual functional capacity" finding. AR 31-32. In so doing, the ALJ cited the same evidence noted above to discount the opinions of Plaintiff's treating physicians. For the same reasons, the Court finds that the opinions of the state agency physicians may serve as substantial evidence to discount the opinions of Drs. Chu and Shankar.

### 3. RFC Finding

As a final matter, Plaintiff appears to argue that the ALJ erred because the physical RFC did not reflect any particular physician's medical opinion. This argument lacks merit.

"It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). An RFC "is the most [one] can still do despite [his or her] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 404.1545(a)(1). While it is true that an ALJ is "not qualified to interpret raw medical data in functional terms," *Padilla v. Astrue*, 541 F.Supp.2d 1102, 1106 (C.D. Cal. 2008), the ALJ is not precluded from making an RFC finding that differs from assessments contained in medical source statements. Indeed, "[t]he ALJ's RFC determination need not precisely reflect any particular medical provider's assessment." *Holcomb v. Comm'r Soc. Sec.*, No. 2:17-cv-02268-KJM-CKD, 2019 WL 176266, at *4 (E.D. Cal. Jan. 11, 2019) (citing *Turner v. Comm'r Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010)).

Insofar as Plaintiff contends that the ALJ erred by reviewing Dr. Chu's treatment records and interpreting the clinical findings and test results, Plaintiff's argument lacks merit. The ALJ's determination of a claimant's RFC must be based on the medical opinions and the totality of the record. 20 C.F.R. §§ 404.1527(d), 404.1546(c). Moreover, the ALJ is responsible for "'resolving conflicts in medical testimony, and for resolving ambiguities.'" *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (quoting *Andrews*, 53 F.3d at 1039). In weighing and evaluating the evidence, the ALJ must consider the entire case record, including each medical opinion in the record, together with the rest of the relevant evidence. 20 C.F.R. § 404.1527(b).

Here, the ALJ cited medical evidence and treatment records to support his RFC finding that Plaintiff could perform a range of light work. In so doing, the ALJ considered Plaintiff's diagnostic testing, which confirmed limitations in Plaintiff's right wrist, but also demonstrated that Plaintiff only had "mild osteoarthritis" in his feet with no evidence of gout and only "minimal tricompartmental osteoarthritis" in his knees. AR 30, 489, 490. The ALJ also cited and considered Plaintiff's treatment records, including those physical examinations discussed above, that were generally unremarkable beyond recurring limitations with Plaintiff's right wrist. AR 30.

In addition to diagnostic and treatment records, the ALJ also considered evidence of Plaintiff's functional abilities. As noted above, Dr. Shankar repeatedly indicated that Plaintiff did not require assistance to perform his activities of daily living, including activities related to continence, bathing, transferring, toileting, dressing and eating. AR 30, 366, 368, 371, 376. The ALJ also cited Plaintiff's own testimony that he could walk the length of a football filed twice, could lift 20 pounds 2 to 3 times per hour, and that he never cancelled a doctor's appointment even when experiencing attacks of gout. AR 32, 58, 59-60, 66. Moreover, the ALJ's adverse credibility finding regarding daily activities supports the ALJ's RFC, including Plaintiff's assertions that, among other things, he did his own grocery shopping, he was capable of walking the length of a football field twice, lifting 20 pounds 2 to 3 times in an hour, he did not have problems with his left wrist, he was capable of attending parent teacher conference, going to sporting events, picking up the children from school, and driving. AR 28-29, 54, 58, 59-60, 68-69, 211.

///
///
///
///
///
///
///
///
///

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff Carmin Ray Davis.

IT IS SO ORDERED.

Dated: **February 21, 2019**         /s/ *Barbara A. McAuliffe*
                                     UNITED STATES MAGISTRATE JUDGE